Joseph R. Taylor, Esq. (CA Bar No.: 129933)
 jtaylor@linerlaw.com
Bennett A. Bigman, Esq. (CA Bar No.: 115426)
 bbigman@linerlaw.com
Kim Zeldin, Esq. (CA Bar No.: 135780)
 kzeldin@linerlaw.com
Kristina M. Fredericks, Esq. (CA Bar No.: 230096)
 kfredericks@linerlaw.com
LINER GRODE STEIN YANKELEVITZ
SUNSHINE REGENSTREIF & TAYLOR LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024-3503
Telephone: (310) 500-3500
Facsimile: (310) 500-3501
Admitted Pro Hac Vice

Bruno Wolfenzon, Esq. (NV Bar No.: 6177)
 bwolfenzon@wolfenzon.com
Daniel J. Reed, Esq. (NV Bar No.: 11249)
 dreed@wolfenzon.com
WOLFENZON SCHULMAN & RYAN
6725 Via Austi Parkway
Las Vegas, Nevada 89118
Telephone: (702) 836-3138
Facsimile: (702) 836-3139

Attorneys for Defendant and Counterclaimant
The Upper Deck Company

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ANIPLEX, INCORPORATED, a Japanese corporation,<br><br>Plaintiff and Counter-Defendant,<br><br>vs.<br><br>THE UPPER DECK COMPANY, a Nevada corporation,<br><br>Defendant and Counterclaimant. | Case No. 2:08-CV-00442-HDM-PAL<br><br>**DECLARATION OF JOHN SEPENUK IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT THE UPPER DECK COMPANY'S OPPOSITION TO ANIPLEX, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Oral Argument Requested]<br><br>[Memorandum of Points and Authorities in Opposition; Statement of Genuine Issues; Evidentiary Objections; Notice of Manual Filing of Evidence; and Declarations of Kristina Fredericks and Jordan Mendoza Filed Concurrently Herewith] |

0038528/017/ 473183v01

I, John Sepenuk, declare as follows:

1. I am a former employee of The Upper Deck Company ("Upper Deck"). I make this declaration in support of Upper Deck's Opposition to Aniplex, Incorporated's ("Aniplex") Motion for Partial Summary Judgment. Unless otherwise stated, I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify hereto. As to those matters about which I do not have personal knowledge, my statements are made upon information and belief.

2. I worked on and off as an employee or consultant for Upper Deck from 1997 through November 2008. I was initially a marketing manager for the Asia Pacific territories. From April 2003 until November 2008, I was employed at Upper Deck as Managing Director of Asia Pacific. Generally, my responsibilities as Managing Director of Asia Pacific included managing Upper Deck's relationship with Konami regarding the Yu-Gi-Oh! trading card game and overseeing the Asia Pacific territory for sales and distribution of Upper Deck's core products which were trading cards and some collectibles. In or about 2005, I was promoted to Vice President of International and my responsibilities increased to cover sales and distribution of Upper Deck's core products in Latin America. In 2007, my title changed to Vice President of Global Business Development. This was a shift in responsibility away from the bottom line sales-driven responsibilities and more towards global business development activities, which focused on original intellectual property development. Part of my responsibilities as Managing Director of Asia Pacific and Vice President of International included the responsibility for negotiating agreements with third parties such as Aniplex relating to "Kiba." I was the person at Upper Deck responsible for the management of the "Kiba" project.

3. During production of the "Kiba" anime series, I voiced my concerns to Asa Suehira at Aniplex regarding the repeated use of sword fighting rather than shard battles in "Kiba" and the inappropriate level of violence depicted in the anime. Attached hereto as Exhibit 41 is a true and correct copy of an email I sent on April 5, 2005 to Mr. Suehira stating that Upper Deck was frustrated by the emphasis on sword fighting and the inappropriate violence in the "Kiba" anime. Included with Exhibit 41 is Mr. Suehira's response sent on the same date.

2

4. The "Kiba" anime began airing in early April 2006. On April 11, 2006, immediately upon reviewing the first few episodes of "Kiba," I sent a lengthy email to Mr. Suehira detailing Upper Deck's serious concerns with the first four episodes of the "Kiba" anime. Attached hereto as Exhibit 42 is a true and correct copy of the April 11, 2006 email from myself to Mr. Suehira.

5. Throughout the summer of 2006, I and others at Upper Deck remained concerned about the quality and content of the "Kiba" anime. This led to a payment dispute between Aniplex and Upper Deck under the Short Form.

6. Individuals from Upper Deck and Aniplex met in Las Vegas, Nevada in September 2006, to discuss their respective concerns. I attended that meeting along with Richard McWilliam of Upper Deck and Kenichi Oshima of Upper Deck Japan. At that meeting we discussed the possibility of amending the parties' Short Form agreement with respect to the manner and timing of the payments. I always intended that there would be a written agreement memorializing any amendment of the Short Form and that any such agreement would not be binding until it was signed by both parties. It was my understanding that this was Upper Deck's position as well.

7. On or about October 4, 2006, Mr. Suehira sent me an email attaching a proposed amendment to the Short Form, which included new payment terms. Attached hereto as Exhibit 43 is a true and correct copy of that email. Later the parties discussed incorporating the proposed amendment into an amended and restated short form agreement.

8. Aniplex had been demanding payment under the Short Form for several months. On or about November 7, 2006, I asked Richard McWilliam, the CEO of Upper Deck, to authorize payment of $205,226.70 to Aniplex as a good faith accommodation to Aniplex in anticipation of eventually reaching agreement on the terms of an amended and restated short form agreement. At the time, I did not believe that we had reached any binding agreement as to the terms of an amended and restated short form agreement.

9. On or about November 8, 2006, I asked Richard McWilliam to authorize payment of $1,131,341.40 to Aniplex as a good faith accommodation to Aniplex in anticipation of eventually reaching agreement on the terms of an amended and restated short form agreement. At the time, I

1  did not believe that we had reached any binding agreement as to the terms of an amended and
2  restated short form agreement.

3      10.    On or about December 21, 2006, I received an email from Kenichi Oshima
4  informing me that Jun Tanaka from Aniplex would not sign the amended and restated short form
5  agreement until Upper Deck provided Aniplex with its signature on the document. Attached hereto
6  as Exhibit 44 is a true and correct copy of that email.

7      11.    I did not give Mr. Oshima authority to send the email attached to the declaration of
8  Mr. Pollack as Exhibit 41, or to accept any amended and restated short form on behalf of Upper
9  Deck..

10      12.    On or about December 26, 2006, I received an email from Mr. Suehira informing
11  me that Aniplex was ready to sign the amended and restated short form agreement and asking me
12  to have Mr. McWilliam sign the agreement. Later that same day, I received another email from
13  Mr. Suehira informing me that that he had "found some comments that need to be made on the
14  agreements" and asking me not to have Mr. McWilliam sign the agreement. Attached hereto as
15  Exhibit 45 is a true and correct copy of those emails.

16      13.    On or about January 10, 2007, Mr. Tanaka from Aniplex forwarded a revised draft
17  of the amended and restated short form agreement to Mr. Oshima that further revised the payment
18  terms of the draft agreement. That same day, Mr. Oshima forwarded that draft agreement to me.
19  Attached hereto as Exhibit 46 is a true and correct copy of the revised draft redline of the amended
20  and restated short form agreement prepared by Aniplex.

21      14.    On or about January 10, 2007, Mr. Tanaka sent me an email asking for the reason
22  for Upper Deck's delay in payment. I informed him that the delay in payment was caused by the
23  delay in finalizing the amended and restated short form agreement and reminded him that Upper
24  Deck had been asked by Aniplex not to sign the agreements. Attached hereto as Exhibit 47 is a
25  true and correct copy of the emails between myself and Mr. Tanaka dated January 10 and 11, 2007.

26      15.    Upper Deck did not accept the terms of the revised amended and restated short form
27  agreement that had been circulated by Aniplex on or about January 10, 2007. On or about January
28  19, 2007, I sent an email to Mr. Tanaka informing him that Upper Deck had discovered an issue

relating to the earlier payment of $3 million to Aniplex's sister company, Dream Ranch, which had been addressed in the Short Form and draft amended and restated short form. Upper Deck needed to resolve that issue as part of the parties' continuing negotiations over the amended and restated short form. Attached hereto as Exhibit 48 is a true and correct copy of my January 19, 2007 email to Mr. Tanaka.

16. On or about February 14, 2007, Adam Sullins who was, at the time, in-house counsel for Upper Deck, sent a letter to Mr. Tanaka setting forth Upper Deck's proposal for addressing Upper Deck's and Aniplex's disputes and addressing the issue relating to the earlier payment of $3 million to Dream Ranch. Attached hereto as Exhibit 49 is a true and correct copy of that letter.

17. On or about March 7, 2007, Gregory Payne, an attorney for Aniplex, sent a letter to Mr. Sullins setting forth a revised proposal for addressing Upper Deck and Aniplex's disputes. Attached hereto as Exhibit 50 is a true and correct copy of that letter.

18. Aniplex and Upper Deck were eventually unable to reach a resolution of their disputes. On or about August 8, 2007, Mr. Payne sent a letter to Upper Deck declaring Upper Deck in breach of the original Short Form. Attached hereto as Exhibit 51 is a true and correct copy of Mr. Payne's letter to Upper Deck. Upper Deck responded to that letter on August 9, 2007. Attached hereto as Exhibit 52 is a true and correct copy of the August 9, 2007 letter from an attorney in Upper Deck's legal department, Kyle Campbell, to Mr. Payne.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _18_ day of _August_, 2010, at _Irvine_, California.

_____
John Sepenuk

5

0038528/017/ 473183v01